United States Court of Appeals,

Eleventh Circuit.

No. 94-2772.

Frank Elijah SMITH, Petitioner-Appellee,

v.

Harry K. SINGLETARY, Respondent-Appellant.

Aug. 1, 1995.

Appeal from the United States District Court for the Northern District of Florida. (No. TCA-90-40035-WS), William Stafford, Chief Judge.

Before TJOFLAT, Chief Judge, HATCHETT and EDMONDSON, Circuit Judges.

PER CURIAM:

In this capital case, the sentencing court violated *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). This appeal requires us to determine whether this error was harmless under the standard articulated in *Brecht v. Abrahamson, --- U.S. ----,* 113 S.Ct. 1710, 123 L.Ed.2d 1710 (1993). We affirm the district court's determination that the error was *not* harmless under the *Brecht* standard.

FACTS

On December 12, 1978, appellee, Frank Elijah Smith, and two accomplices, Johnny Copeland and Victor Hall, robbed a convenience store in Wakulla County, Florida. They also abducted the store clerk, took her to a motel, and sexually assaulted her. They then drove the clerk to a wooded area. Smith and Copeland took the clerk into the woods while Hall waited in the car. While waiting, Hall heard three gunshots. Copeland and Smith then returned to the car without the clerk. Two days later, the clerk's body was found

with three bullet wounds in the back of her head.

PROCEDURAL HISTORY

A Florida jury found Smith guilty of first-degree murder and recommended the death penalty. In accordance with the jury's recommendation, the court sentenced Smith to death on the basis of six aggravating factors: (1) that he had two prior convictions for violent felonies; (2) that he committed the murder in the course of a kidnapping; (3) that he committed the murder to avoid arrest; (4) that he committed the murder for pecuniary gain; (5) that the murder was heinous, atrocious, and cruel; and (6) that the murder was cold, calculated, and premeditated. The court found only one mitigating factor: Smith was nineteen years old when he committed the crime.

Smith's conviction and death sentence were affirmed on direct appeal, and the United States Supreme Court denied his petition for a writ of *certiorari. Smith v. State,* 424 So.2d 726 (Fla.1982), *cert. denied,* 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983). Smith then commenced his first habeas corpus petition, which was denied in both state and federal court. *Smith v. State,* 457 So.2d 1380 (Fla.1984); *Smith v. Dugger,* 840 F.2d 787 (11th Cir.1988). Smith, however, filed a petition for rehearing with this court. This court denied Smith's petition without prejudice so that he could present an unexhausted *Hitchcock* claim to the Florida courts. *Smith v. Dugger,* 888 F.2d 94 (11th Cir.1989).

On July 31, 1989, Smith filed a second habeas corpus petition in state court. A Florida trial court found all of Smith's claims to be procedurally barred, with the exception of his *Hitchcock*

claim, which it denied on the merits. On appeal, the Florida Supreme Court held that the sentencing court had committed a *Hitchcock* error, but that under the standard articulated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the error was harmless. *Smith v. State,* 556 So.2d 1096 (Fla.1990).

Smith then filed a petition in the district court. The district court agreed that the sentencing court had committed a *Hitchcock* error, but disagreed with the Florida Supreme Court's determination that the error was harmless; instead, the district court granted Smith relief on his *Hitchcock* claim because it found that the error was not harmless under *Chapman. Smith v. Dugger,* 758 F.Supp. 688 (N.D.Fla.1990). This court affirmed. *Smith v. Singletary,* 970 F.2d 766 (11th Cir.1992).

The state then petitioned for a writ of *certiorari.* On April 26, 1993, the Supreme Court granted the state's petition and remanded the case for reconsideration in light of *Brecht,* which it had recently decided. *Singletary v. Smith,* --- U.S. ----, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993). On remand, the district court, applying *Brecht,* again determined that the *Hitchcock* error was not harmless. The state now appeals the district court's decision.

## ISSUE

The only issue on appeal is whether the sentencing court's *Hitchcock* error was harmless under the *Brecht* standard.

## DISCUSSION

"[I]n capital cases, "the sentencer' may not refuse to consider or "be precluded from considering' any relevant mitigating evidence." *Hitchcock,* 481 U.S. at 394, 107 S.Ct. at 1822 (quoting

*Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986)).  The state concedes that the sentencing court committed a *Hitchcock* error in this case.

"Harmless error is a mixed question of law and fact subject to de novo review."  *Bonner v. Holt,* 26 F.3d 1081, 1083 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1328, 131 L.Ed.2d 207 (1995).  While this court has plenary review of the ultimate determination of whether an error is harmless, we will only review the findings of fact which underlie that determination for clear error.  *See Stano v. Butterworth,* 51 F.3d 942, 944 (11th Cir.1995) (" "[U]ltimate' determination of ... a mixed question of law and fact ... is subject to *de novo* review[, but "w]e will not disregard or overturn findings of fact made by the district court unless they are clearly erroneous.' ") (quoting *Jurek v. Estelle,* 623 F.2d 929, 932 (5th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981));  *Smith v. White,* 815 F.2d 1401, 1407 (11th Cir.) ("[A] federal district court's ultimate legal conclusion ... is subject to independent review by an appellate court in a habeas action, although subsidiary factual findings by the district court are conclusive unless clearly erroneous."), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).

In determining whether a *Hitchcock* error is harmless, a habeas corpus court must consider both the mitigating evidence presented at sentencing as well as mitigating evidence that could have been presented, but which "the state trial court prevented the petitioner from presenting."  *Aldridge v. Dugger,* 925 F.2d 1320, 1329 (11th Cir.1991).  In other words, a habeas corpus court must

consider all potential mitigating evidence that would have been
presented, but for the *Hitchcock* error. *See Booker v. Dugger,* 922
F.2d 633, 636 (11th Cir.), *cert. denied,* 502 U.S. 900, 112 S.Ct.
277, 116 L.Ed.2d 228 (1991). In determining whether potential
mitigating evidence would have been presented, a district court
will usually have to weigh "post-trial affidavits or testimony of
trial counsel and other witnesses and proffers of nonstatutory
mitigating evidence claimed to have been available at the time of
sentencing." *Knight v. Dugger,* 863 F.2d 705, 708 (11th Cir.1988).

In this case, the state concedes that defense counsel made the
following four arguments to the jury, which did not receive
appropriate consideration due to the *Hitchcock* violation: "(1) the
defendant did not personally kill the victim, (2) the defendant was
only fifteen years old when he committed his prior robberies, (3)
the defendant had been drinking gin and smoking marijuana the
evening of the crime, and (4) the defendant was influenced by the
dominant personality of his accomplice." *Smith,* 758 F.Supp. at
693. In addition to these four circumstances, the district court
reviewed the record and various proffers, and found that the
sentencing court precluded the presentation of the following ten
mitigating factors:

> [5] Smith tried to dissuade his accomplice, Johnny Copeland,
> from killing the girl; [6] Smith was guilty under the felony
> murder doctrine; [7] a "cooperating" accomplice, Victor Hall,
> was expecting to receive a life sentence, with eligibility for
> parole after eight or ten years, even though he too was guilty
> of the same three underlying felonies....
>
> ... [8] [Smith] had a long-term history of alcohol and
> substance abuse; [9] [Smith] suffered from grand mal
> epilepsy; [10] [Smith] was, for all practical purposes,
> abandoned by his mother and abused by his grandmother; [11]
> [Smith] had a history of childhood deprivation including

malnourishment, lack of adequate parenting, inadequate clothing and shelter, and lack of medication for his medical needs, especially his epilepsy; [12] [Smith] was mistakenly incarcerated at an adult institution when he was convicted of robbery at age 15; [13] [Smith] was known to be non-violent, meek and soft-spoken; and [14] [Smith] was diagnosed as having diffuse and long-standing brain damage, consistent with his history of alcohol abuse and epilepsy disorder.

*Smith,* 758 F.Supp. at 694. The state argues that the sentencing court did not prevent Smith's counsel from presenting evidence concerning these last ten circumstances; instead, counsel strategically chose not to present such evidence. Therefore, we should not consider these mitigating factors when conducting our harmless error review.

Although not cited, the state's argument resembles the one made in *Bolender v. Singletary,* 16 F.3d 1547 (11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994). In *Bolender,* the district court found that the sentencing court did not preclude the presentation of mitigating background evidence. *Bolender,* 16 F.3d at 1566. Relying on the district court's factual determination, this court concluded that "[t]he decision not to introduce the background evidence was the product of strategy," and, therefore, the sentencing court did not commit a *Hitchcock* violation. *Bolender,* 16 F.3d at 1566. The factual and procedural posture of *Bolender,* however, make it distinguishable. Unlike *Bolender,* the district court in this case specifically found that the sentencing court precluded the presentation of the above mitigating factors, and, as we indicated in our previous decision, "the record well supports the district court's findings of fact."

*Smith,* 970 F.2d at 766.[1]  Thus, the *Hitchcock* error in this case included the improper consideration of mitigating evidence that was in fact presented as well as the preclusion of other potential mitigating evidence.  As a result, in conducting our harmless error analysis, we must consider all of the fourteen mitigating circumstances listed above (the four that were presented and the ten that were precluded from presentation).

When reviewing trial errors for harmlessness, federal habeas corpus courts no longer utilize the *Chapman* "harmless beyond a reasonable doubt" standard;  instead, they must apply the less onerous standard described in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).  *See Brecht,* --- U.S. at ----, ----, 113 S.Ct. at 1714, 1722.[2]  "*Hitchcock* errors are "trial errors' governed by *Brecht.*"  *Horsley,* 45 F.3d at 1492;  *see also*

---

[1]In other words, the district court did not clearly err in making its findings of fact, nor did it commit an abuse of discretion in denying the state's belated request for an evidentiary hearing.

[2]We note that the circuits are split as to whether the *Kotteakos* standard should be applied if the state courts have not conducted a harmless error analysis under *Chapman.  Compare Tyson v. Trigg,* 50 F.3d 436, 446-47 (7th Cir.1995) (federal habeas corpus courts should apply the *Kotteakos* standard even if state courts have not conducted a *Chapman* analysis);  *Horsley v. State of Ala.,* 45 F.3d 1486, 1492 n. 11 (11th Cir.1995) (same);  *with Horsley,* 45 F.3d at 1498 n. 3 (Hatchett, J., dissenting) (*Chapman* standard applies when a federal habeas corpus court is the first court to conduct a harmless error analysis);  *Williams v. Clarke,* 40 F.3d 1529, 1540-41 (8th Cir.1994) (same), *cert. denied,* --- U.S. ----, 115 S.Ct. 1397, 131 L.Ed.2d 247 (1995);  *Fields v. Leapley,* 30 F.3d 986, 991 (8th Cir.1994) (same);  *Starr v. Lockhart,* 23 F.3d 1280, 1291-92 (8th Cir.) (same), *cert. denied,* --- U.S. ----, 115 S.Ct. 499, 130 L.Ed.2d 409 (1994);  *Orndorff v. Lockhart,* 998 F.2d 1426, 1430 (8th Cir.1993) (same), *cert. denied,* --- U.S. ----, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994). We are not concerned with this split, however, because the Florida Supreme Court conducted a *Chapman* harmless error analysis in this case.  Thus, the *Kotteakos* standard clearly applies.

*Bolender,* 16 F.3d at 1567. Therefore, we must decide whether the *Hitchcock* error in this case "had substantial and injurious effect or influence in determining" Smith's death sentence. *Brecht,* --- U.S. at ----, 113 S.Ct. at 1712 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253).

The Supreme Court has recently clarified that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch,* --- U.S. ----, ----, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995). Thus, Smith points out that if we have grave doubt as to whether the *Hitchcock* error was harmless, we must rule in his favor. Given the district court's factual determinations concerning the wealth of mitigating evidence that was both presented and precluded, we can only conclude that the *Hitchcock* error in this case had a substantial effect on the outcome of Smith's sentence.

## CONCLUSION

Accordingly, we affirm the district court's order granting Smith habeas corpus relief because the *Hitchcock* error committed at his sentencing was not harmless under the *Brecht* standard.

AFFIRMED.